## McElroy, By &c. v. Yowell.

(Decided February 12, 1918.)

### Appeal from Marion Circuit Court.

1. Appeal and Error—Verdict—Evidence.—In an action for damages for injuries sustained because of a wound from a pistol shot,. alleged to have been fired by a policeman, evidence held not so flagrantly against the weight of the evidence as to induce the belief that it was the result of bias or prejudice.

2. New Trial—Grounds—Surprise.—Where a party did not object to testimony but tacitly, at least, consented to its introduction, and then took his chances upon the verdict in his favor, he is estopped upon appeal from claiming a new trial upon the ground of surprise.

C. H. HILL and H. W. RIVES for appellant.

S. A. RUSSELL and P. K. McELROY for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

About nine o'clock on the evening of October 31, 1915, Halloween night, while walking in Baptist alley,

a public thoroughfare in the city of Lebanon, Kentucky, in company with her mother, grandmother, and three children, Lizzie McElroy, a negro girl about seven years of age, was struck and permanently injured by a bullet fired from a pistol. Alleging that the shot was fired by the defendant, William M. Yowell, a member of the Lebanon police force, she, by her father as her next friend, filed this action to recover damages, including a doctor's bill of $81.00.

That she was injured most seriously and permanently and that her doctor's bill was $81.00 was established by the evidence without contradiction; but there was a sharp issue in the evidence as to whether the defendant fired the shot that struck plaintiff. The first trial resulted in a verdict in favor of plaintiff for $50.00, which was upon her motion set aside and, upon another trial, a verdict was returned in favor of the defendant; and from the judgment thereon dismissing her petition, plaintiff appeals.

The two grounds urged for reversal are:

"The verdict is flagrantly against the evidence; is contrary to the overwhelming weight of the evidence; and is the result of bias and prejudice on the part of the jurors signing the verdict, because of the fact that plaintiff is of the colored race and the defendant a white policeman."

"The plaintiff and her counsel were surprised by the action of defendant in introducing witnesses in the attempt to prove that the lights on the street at the time and place of the shooting were insufficient to show the defendant to the observation of a person located where plaintiff's witnesses were; all as shown by the stenographer's notes of the evidence; plaintiff and her counsel could not have guarded against said surprise by the exercise of ordinary prudence and diligence."

1. Lilly McElroy, the mother of Lizzie, and Edgar Thornton, who was standing near them at the time, testified that they saw the defendant standing on Railroad street at the mouth of Baptist alley and under the electric street light located there, and that he fired five shots from a pistol into Baptist alley, one of which struck plaintiff and inflicted the injuries sued for. Rob. Williams and D. Allen, who were standing on Railroad street near the mouth of Baptist alley, testified they saw the defendant shoot five shots into the alley and im-

mediately thereafter heard a child up in the alley scream and a woman say, "Somebody's shot my baby." These two witnesses, however, located the defendant, at the time he fired the shots, near the center of Railroad street instead of under the electric street light, which was situated on the side of Railroad street at the mouth of Baptist alley. Georgia Jarboe testified that she saw the defendant shooting on Railroad street near the mouth of the alley, but she did not give his exact location or attempt to say in what direction he shot, or that she heard any outcry after the shooting.

Defendant admitted firing his pistol five times while standing on Railroad street near, but not opposite, the mouth of the alley; but denied that he fired any of the shots in the direction of the alley, stating that two of them were fired over the old cemetery and three into the ground. He stated that, following the shooting, there was no outcry in the alley; and that, after firing the shots, he, in company with N. A. Fishburn, another policeman who had arrived upon the scene while he was shooting, went down to the depot where there was some disturbance and, while there he heard some other shots which sounded like they were in Baptist alley; and that he and Fishburn walked back past the alley and heard nothing of any one being hurt until some time later, when in another part of the town Tom McElroy, father of Lizzie, came to him and accused him of having shot his daughter, which he denied; in all of which he was corroborated by Fishburn, and as to the direction in which the shots were fired he was corroborated by a negro, Frank Motley, who was standing near the mouth of the alley at the time of the shooting. Lee Nicholson heard shots in the direction of the alley after the defendant and Fishburn had left there and come to the place near the depot where the witness was standing. N. A. Fishburn, J. A. Smith, and Ben Mattingly testified that, shortly before the trial and after night with the electric light burning as upon the night of the accident, they went upon the ground and with the defendant standing where he claimed to have been when he fired the shots, the witnesses, standing where plaintiff was when she was shot, were unable to see the defendant, the distance between the two points being fixed by some of the witnesses at from 125 to 175 yards.

It will, therefore, be seen that for the plaintiff four witnesses testified that they saw the defendant fire the

shot which injured plaintiff; while for the defendant three witnesses testified, in effect, that he did not fire the shot that struck plaintiff; since they say he did not fire in her direction, nor at the time she was hurt; and that three other witnesses testified that, standing where two of plaintiff's witnesses placed themselves, they could not have seen or recognized the defendant as they claimed to have done.

That the defendant recklessly, and in violation of his duty as a peace officer, fired his pistol upon a public street and thereby simply augmented any existing lawlessness, with which plaintiff was in nowise connected, no one denies; but that his unbecoming conduct was the cause of the deplorable accident to the plaintiff is a matter of much doubt, depending upon which set of witnesses, nearly equal numerically, is to be believed, which was clearly a question for the jury, who surely could not have entertained or been actuated in the verdict they made by any prejudice or bias against this unfortunate little girl in favor of an officer of the law whose only excuse for his conduct was that, because an officer once upon a time had been killed in that alley, he was afraid to go in there to quell a disturbance he alone said was in progress up in the alley. Her condition and his conduct could not have helped but range the sympathies of the jury on her side. In our judgment, only a conviction upon the part of the jury that the witnesses for the defendant, rather than those for the plaintiff, were telling the truth, can account for the verdict; and this being true, we would not be justified in setting it aside upon the ground that it is flagrantly against the evidence, or the result of race prejudice.

2. The other ground for reversal, relied upon by the plaintiff, if by raising the question in the lower court it could have been made so, is clearly not available, because of the fact that the plaintiff not only did not object to this testimony but tacitly, at least, consented to its introduction and then took her chances upon the verdict, after which, upon appeal, she is estopped to complain thereof. Ramley v. I. C. R. Co., 151 Ky. 796; Liverpool & London & Globe Insurance Co. v. Wright, 158 Ky. 290; Mulloy v. City of Louisville, 161 Ky. 596.

Judgment affirmed.